UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKKISHA MARIE
CARTER,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____/

Case No. 4:18-cv-11742
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 19) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

Plaintiff, Lakkisha Marie Carter, proceeding *pro se*, brings this action under 42 U.S.C § 405(g) and 42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance (DI) and supplemental security income (SSI) benefits. This

matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 18), the Commissioner's cross-motion for summary judgment (DE 19), Plaintiff's reply (DE 21) and the administrative record (DE 15).

### A.    Background and Administrative History

Plaintiff alleges her disability began on January 20, 2015, at the age of 42. (R. at 233.) In her disability report, she lists arthritis, depression, and anxiety as limiting her ability to work. (R. at 237.) Her applications were denied on July 24, 2015. (R. at 129-130, 137-38.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 145.) On May 18, 2017, ALJ Robert G. O'Blennis held a hearing, at which Plaintiff and a vocational expert (VE), Deborah A. Determan, testified. (R. at 45-84.) On November 20, 2017, ALJ O'Blennis issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 26-44.)

Plaintiff submitted a request for review of the hearing decision/order. (R. at 189-192.) However, on March 23, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1-5.) Thus, ALJ O'Blennis' decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 1, 2018.

### B. Plaintiff's Medical History

The administrative record contains approximately 159 pages of medical records, which were available to the ALJ at the time of his November 20, 2017 decision. (R. at 43-44, 313-472 [Exhibits 1F-13F].) These materials will be discussed in detail, as necessary, below.

### C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 20, 2015, the application date. (R. at 32.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: severed left ulnar nerve, degenerative joint disease of the left knee, depression, and anxiety disorder. (*Id*.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 32-34.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except she needed to avoid climbing ropes, ladders, and scaffolds. [*i.e.*, *exertional limitations*] She also needed to

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

3

>avoid working at unprotected, dangerous heights and around unprotected, dangerous machinery. The claimant needed to avoid jobs exposing her to whole body vibration as well as jobs requiring ambulating on unimproved terrain such as open fields or construction sites. [*i.e.*, *environmental limitations*] The claimant has limited use of her ring and little fingers on her non-dominant left upper extremity. [*i.e.*, *manipulative limitations*] Additionally, the claimant was limited to simple and/or repetitive work that did not require close interaction with the public. [*i.e.*, *mental health limitations*]

(*Id*. at 34-37.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id*. at 37.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as routing clerk, photo copy machine operator, and coin machine collector. (*Id*. at 37-38.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 20, 2015. (*Id*. at 38.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

5

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.  Analysis

Plaintiff asserts one claim of error: that the ALJ erred at Step 3 the sequential analysis "because he failed to consider [Plaintiff's] physical impairments in determining whether any of her severe impairments, separately or in combination, met or medically equaled the criteria of one of the listed impairments." (DE 18 at 7.)  Plaintiff contends that the ALJ thus failed to examine whether Plaintiff's "current left knee degeneration" meets or equals Listing 1.02. (*Id.* at 12-13.)  The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal one of the listed impairments, including Listing 1.02.  (DE 19 at 10-18.)

#### 1.  The ALJ's Step 3 determination

The regulations governing the analysis here require that the ALJ "consider all evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and, in particular at Step 3, "consider the medical severity of [the claimant's] impairments." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Consistent with those requirements, ALJ O'Blennis stated in his opinion that he:

6

> … considered all of the claimant's impairments, individually and in combination, but found no evidence that the clinical findings from such impairments reach the level of severity in the listings. Lack of objective medical evidence is a factor the undersigned may consider. Since the claimant shows no evidence of an impairment that meets or medically equals the criteria of a listed impairment or a combination of impairments equivalent in severity (not in mere numbers) to a listed impairment, disability cannot be established on the medical facts alone (20 CFR 404.1520(d) and 416.920(d)).

(R. at 32.) The ALJ then further addressed the severity of Plaintiff's mental impairments and whether they met or medically equaled Listings 12.04 and 12.06, including whether the "paragraph B" and "paragraph C" criteria were satisfied. (*Id.* at 32-33.)

While the ALJ's Step 3 finding, at least as it relates to Plaintiff's physical impairments, is admittedly cursory, "it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination." *Smukala v. Comm'r of Soc. Sec.*, No. 15-10612, 2016 WL 943953, at *10 (E.D. Mich. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016); *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at *9 (E.D. Mich. Jan. 13, 2015) (holding that an ALJ does not err where his Step Three findings are supported by findings at Step Four).

Plaintiff's argument that the ALJ's analysis is insufficient, citing *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411 (6th Cir. 2011), fails. The

7

*Reynolds* court suggested that an insufficient listing or equivalency analysis "was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id.* at 415. The court found that this required remand without additional analysis of whether the claimant's impairments actually met or equaled a listing. *Id.*

However, the unpublished decision in *Reynolds* and its progeny has been undermined by other, more recent Sixth Circuit decisions (which are also unpublished). These have declined "to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry" if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusions at step three." *See, e.g., Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that any error in the ALJ's Step 3 findings "is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairments between October 2006 and July 2011"); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding that ALJ's determination was supported by evidence in the record, and thus it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment). Rather, the more recent case law indicates that any error with respect to the ALJ's Step 3 analysis is harmless unless the claimant can establish that she

satisfied the listing in question. *Forrest*, 591 F. App'x at 366 (distinguishing *Reynolds* and holding any error harmless "because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment"). This is consistent with the fact that "during the first four steps [of the sequential analysis], the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

More specifically, an ALJ's failure to articulate Step 3 findings is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled…." *See M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 859 (E.D. Mich. 2012) (Goldsmith, J., adopting the report and recommendation of Michelson, M.J.) (citation omitted). This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting … that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews v. Comm'r of Soc. Sec.*, No. 12-13111, 2013 WL 2200393, at *12 (E.D. Mich. May 20, 2013) (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted)). As the *Staggs* court further explained, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the

9

ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings [at Step 3], [he] would have found the claimant not disabled." *M.G.*, 861 F.Supp.2d at 861.

### 2.   Plaintiff has failed to prove she meets every element of Listing 1.02

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that she is disabled at Step 3 of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden at Step 3 to prove that "all of the specified medical criteria" are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). Moreover, "[t]he burden of providing a … record … complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed when medical evidence "almost establishes a disability" under Listing).

10

Plaintiff claims in her motion that "[t]here is substantial evidence in the record that could support a finding that [her] left knee joint degeneration meets or medically equals the criteria of Listing 1.02—major dysfunction o[f] a joint(s) (due to any cause)." (DE 18 at 11.) Listing 1.02 requires:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s).
>
> With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. The regulations define "inability to ambulate effectively" as "an *extreme limitation* on the ability to walk; i.e., an impairment(s) that *interferes very seriously* with the individual's ability to independently initiate, sustain, or complete activities." *Id.* § 1.00B2b(1) (emphases added). Examples of ineffective ambulation are "the inability to walk without the use of a walker, two crutches or two canes," "the inability to walk a block at a reasonable pace on rough or uneven surfaces," and "the inability to carry out routine ambulatory activities, such as shopping and banking." *Id..* § 1.002B2b(2).

Plaintiff, however, has failed to meet her burden at Step 3 to prove that "all of the specified medical criteria" of Listing 1.02 are satisfied. *See King*, 742 F.2d

11

at 974. She in fact never previously claimed, before either the ALJ or the Appeals Council, that she met or equaled Listing 1.02. Plaintiff instead generally refers in her motion to the same record evidence that was cited by the ALJ and complains that he "failed to examine [Plaintiff's] current left knee degeneration as meeting or medically equaling Listing 1.02." (DE 18 at 11-13.) However, she provides no developed argument, as is her burden, supporting *how* her knee impairments constitute a "gross anatomical deformity," or setting forth any "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s)," and she does not otherwise address *how* the evidence satisfies the above-referenced definition of "inability to ambulate effectively," as required to meet Listing. 1.02. Moreover, Plaintiff's contention, even if true, that substantial evidence in the record *could* support a finding that Plaintiff's left knee joint degeneration meets or medically equals the criteria of Listing 1.02 does not change this analysis, because an ALJ's decision cannot be reversed merely because there exists some other evidence in the record that might support a different conclusion. *See Pitts v. Comm'r of Soc. Sec.*, No. 17-cv-10184, 2018 WL 1221867, at *6 (E.D. Mich. Feb. 14, 2018 ) (the ALJ's step three determination "falls within the ALJ's zone of choice" and thus "his step-three determination that Plaintiff's impairments do not meet Listing 12.05C should not be disturbed"), *report and recommendation adopted by* 2018 WL 1203500 (E.D.

Mich. Mar. 8, 2018); *Brown v. Berryhill*, No 1:17CV1912, 2018 WL 3548843, at *19 (N.D. Ohio July 24, 2018) (explaining that "[t]his 'zone of choice' includes resolving conflicts in the evidence and deciding questions of credibility" and finding that "the ALJ's step three findings that Brown did not meet or equal the requirements of Listings 1.02, 1.03 and 1.04 are within that 'zone of choice' and thus supported by substantial evidence"); *see also McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion…. This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted); *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.").

In any event, a review of the ALJ's opinion, in its entirety, reveals that he did carefully consider the record evidence regarding Plaintiff's "degenerative joint disease of the left knee," including medical and consultative examinations and diagnostic testing, which revealed that her doctor referred her to a rheumatologist in March 2015 due to "overt bony deformities," and that an August 2015 MRI revealed "a degenerative tear of the posterior root of the medial meniscus and the radial tear in the anterior horn/root of the lateral meniscus, a chronic sprain of the

13

fibular collateral ligament and the medial collateral ligament, mild patellar tendinosis, moderate medial tibiofemoral and mild patellofemoral osteoarthritis, and moderate joint effusion with intraarticular loose bodies and/or proliferation synovitis." (R. at 35, citing R. at 317, 320, 334, 336, 339-40, 347.) The ALJ further noted that consultative examiners found that Plaintiff "sat and stood from her chair with ease and did not display pain behaviors," noted that Plaintiff appeared "to be exaggerating her level of pain," that she "used a walker to ambulate, but did 'not need it to ambulate and she walk[ed] fine without it,'" and that "the claimant had a normal gait and station, did not use a walker during the physical examination and 'had full range of motion and even state[d] that she [could] walk at least 500 feet without using her walker.'" (*Id.* at 35, citing R. at 334, 336, 339-40.) The ALJ then summarized:

> Regarding the claimant's degenerative joint disease of the left knee overall, she did not require the use of an assistive device for ambulation, did not attend physical therapy, did not have injections, did not have chiropractic management, did not use a TENS unit, did not use[] a brace, and no treating physician recommended that the claimant undergo knee surgery. Further, despite this impairment, the record describes the claimant as having a normal gait and station as well as a full range of motion.

(R. at 35.) Thus, while the record contains references to Plaintiff's use of a walker, the ALJ's thorough review and recitation of the record evidence supports his finding that Plaintiff is able to ambulate effectively as defined in the Listings. (R. at 35, citing R. at 317, 320, 334, 336, 339-40, 347.) And, as the Commissioner

correctly explains in her motion, under Social Security Ruling (SSR) 17-2p, effective March 27, 2017, "the [ALJ] is not required to articulate specific evidence supporting his or her finding that the [claimant's] impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). Rather, "a statement that the [claimant's] impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* The ALJ's articulation here was sufficient, and Plaintiff has not otherwise met her burden to show that she meets or medically equals the criteria of Listing 1.02. Accordingly, Plaintiff's claim of error should be denied.

### F.     Conclusion

In sum, the ALJ's Step 3 finding is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 25, 2019             s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE