UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKKISHA MARIE CARTER,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Case No. 18-cv-11742
Hon. Matthew F. Leitman

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF #23) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF #22), (2) ADOPTING THE DISPOSITION RECOMMENDED BY THE MAGISTRATE JUDGE, (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #19), AND (4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #18)**

In this action, Plaintiff Lakkisha Marie Carter challenges the denial of her applications for disability insurance benefits and supplemental security income benefits. (*See* Compl., ECF #1.) Both parties have moved for summary judgment. (*See* Motions, ECF ## 18, 19.) On July 26, 2019, the assigned Magistrate Judge issued a Report and Recommendation in which he recommended that the Court grant Defendant Commissioner of Social Security's motion and deny Carter's motion (the "R&R," ECF #22.) Carter has now filed timely objections to the R&R (the "Objections"). (*See* Objections, ECF #23.) For the reasons explained below, the Court **OVERRULES** the Objections, **ADOPTS** the Magistrate Judge's recommend

1

disposition, **GRANTS** the Commissioner's motion for summary judgment (ECF #19), and **DENIES** Carter's motion for summary judgment (ECF #18).

I

A

The issue Carter raises in the Objections is straightforward and does not require a detailed discussion of the factual or procedural background of this action. The essential background is as follows.

Carter alleges that she suffers from degenerative joint disease of the left knee, a severed left ulnar nerve, depression, and an anxiety disorder. (*See* ECF #15-2 at Pg. ID 33.) She says that these conditions render her unable to work and entitle her to disability benefits.

The Social Security Administration denied Carter's applications for benefits on July 23, 2015. (*See* ECF #15-3 at Pg. ID 147-70; ECF #15-4 at Pg. ID 174-75, 182-83.) It denied her applications because it determined that she was "not disabled." (ECF #15-4 at Pg. ID 174.)

Carter thereafter requested a hearing before an Administrative Law Judge (the "ALJ"). (*See id.* at Pg. ID 190.) That hearing took place on May 18, 2017. (*See* ECF #15-2 at Pg. ID 90.) Carter and a vocational expert both testified at the hearing. (*See id.*)

The ALJ issued his decision on Carter's applications for benefits on November 20, 2017. (*See* ALJ's Decision, ECF #15-2 at Pg. ID 72-82.) In that ruling, the ALJ followed "a five-step sequential evaluation process for determining whether [Carter was] disabled." (*Id.* at Pg. ID 73.) This five-step evaluation process proceeds as follows:

> **Step One:** Has claimant engaged in substantial gainful activity? If not, move to Step Two.
>
> **Step Two**: Does claimant suffer from one or more severe impairments? If so, move to Step Three.
>
> **Step Three:** Do the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, claimant <u>is disabled</u>. If not, move to Step Four.
>
> **Step Four:** Considering claimant's residual functional capacity, can the claimant perform his or her past relevant work? If not, move to Step Five.
>
> **Step Five:** Considering claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy? If not, claimant <u>is disabled</u>.

20 C.F.R. § 404.1520.

Relevant to Carter's Objections, the ALJ determined at step two of the analysis that Carter suffered from the following severe impairments: a severed left ulnar nerve, degenerative joint disease of the left knee, depression, and anxiety disorder. (*See* ALJ's Decision, ECF #15-2 at Pg. ID 75.) Then, at step three, the ALJ concluded that Carter was not disabled because none of her severe impairments, individually or in combination, met or "medically equal[ed] the severity of one of the listed impairments" in the Commissioner's Listing of Impairments. (*Id.*)

The ALJ dedicated the bulk of his "step three" analysis to Carter's claimed mental impairments – depression and anxiety disorder. (*See id.* at Pg. ID 75-77.) He addressed her physical impairments in a single paragraph:

> The undersigned considered all of [Carter's] impairments, individually and in combination, but found no evidence that the clinical findings from such impairments reach the level of severity in the listings. [....] Since [Carter] shows no evidence of an impairment that meets or equals the criteria of a listed impairment or of a combination of impairments equivalent in severity (not in mere numbers) to a listed impairment, disability cannot be established on the medical facts alone.

(*Id.* at Pg. ID 75.) As this passage makes clear, the ALJ did not review or analyze Carter's physical impairments in any detail at step three. Instead, as described more fully below, he analyzed her physical impairments and related medical history at step four. (*See id.* at Pg. ID 77-80.) The ALJ ultimately determined that "jobs [] exist in the national economy that [Carter could] perform." (*Id.* at Pg. ID 80.) He

4

therefore concluded that Carter was "not disabled" and not entitled to benefits. (*Id.* at Pg. ID 82.)

B

In this action, Carter claims that the ALJ erred when he failed to properly consider her physical impairments at step three of the five-step sequential disability analysis. More specifically, she contends that "[t]he ALJ erred at step three because he failed to consider [her] physical impairment[s] in determining whether any of her severe impairments, separately or in combination, met or medically equaled the criteria of one of the listed impairments [in the Commissioner's Listing of Impairments]." (Mot., ECF #18 at Pg. ID 532.) And Carter insists that medical records from her rheumatologist establish that her degenerative joint disease of the left knee meets or medically equals the criteria of Listing 1.02 – "Major dysfunction of a joint(s) (due to any cause)." (*Id.* at Pg. ID 537.) Carter therefore maintains that "remand is required for a factual determination as to whether [her] physical impairments, singly, or in combination, meet or medically equal the criteria of a listing." (*Id.* at Pg. ID 535.)

The Magistrate Judge agreed with Carter that the ALJ's finding concerning her physical impairments at step three was "admittedly cursory." (R&R, ECF #22 at Pg. ID 579.) But the Magistrate Judge nonetheless concluded that any error at step three was "harmless" because Carter had the burden to establish that she was

5

disabled at step three, and she "failed to prove that she [met] every element of Listing 1.02." (*Id.* at Pg. ID 582; *see also id.* at Pg. ID 583-87.) The Magistrate Judge further determined that "the ALJ's opinion, in its entirety, reveals that [the ALJ] did carefully consider the record evidence regarding [Carter's] 'degenerative joint disease of the left knee,' including medical and consultative examinations and diagnostic testing." (*Id.* at Pg. ID 585.) The Magistrate Judge therefore recommended that the Court grant the Commissioner's motion for summary judgment and deny Carter's motion. (*See id.* at Pg. ID 587.)

C

Carter raises two related objections to the R&R. (*See* Objections, ECF #23.) First, Carter argues that the ALJ's "failure to provide specific findings regarding [her physical] impairments" at step three of the disability analysis was "not harmless" and entitles her to a remand. (*Id.* at Pg. ID 590.) Second, and relatedly, she argues that the ALJ "made [only] passing mention to [her] knee condition at step 3" and did not "properly consider[]" whether her knee impairment, individually or "in combination with the totality of her other severe[] conditions," met or medically equaled the criteria under Listing 1.02. (*Id.* at Pg. ID 596-97.) Carter therefore insists that the ALJ erred when he concluded that she was not disabled. (*See id.*)

6

**II**

Where a party objects to a portion of a Magistrate Judge's report and recommendation, the Court reviews that portion *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party has not objected. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**III**

The Court overrules Carter's Objections and concludes that she is not entitled to summary judgment. Everyone appears to agree that the ALJ's analysis of Carter's physical impairments at step three of his analysis was, as the Magistrate Judge put it generously, "cursory." There is little dispute that Carter and the Court would have benefited from a more thorough review of Carter's physical impairments at that step. But the question currently before the Court is: does the ALJ's failure to provide a full analysis at step three entitle Carter to benefits or a remand? It does not.

**A**

First, the failure by the ALJ to conduct a detailed analysis of Carter's physical impairments and related medical records at step three does not entitle Carter to relief because the ALJ analyzed those physical impairments at step four of his analysis. At step four, the ALJ first carefully reviewed the medical evidence related to Carter's claimed physical impairments. For instance, the ALJ analyzed records from Carter's

7

treating physician, results from an August 8, 2015, MRI, and records from Carter's rheumatologist related to Carter's left knee impairment. (*See* ALJ Decision, ECF #15-2 at Pg. ID 78.) He also reviewed analyses related to Carter's knee impairment from two consultative examiners who examined Carter in July 2015. (*See id.*) Then, based on a review of those records, the ALJ made the following findings related to Carter's severe left knee impairment:

> Regarding [Carter's] degenerative joint disease of the left knee overall, she did not require the use of an assistive device for ambulation, did not attend physical therapy, did not have injections, did not have chiropractic management, did not use a TENS unit, did not use[] a brace, and no treating physical recommended that [Carter] undergo knee surgery. Further, despite this impairment, the record describes [Carter] as having a normal gait and station as well as a full range of motion []. Thus, although the record indicates that this is a severe impairment, it does not suggest that it causes limitations beyond those included [at step four].

(*Id.*; internal citation omitted.)

The ALJ also analyzed Carter's physical impairment related to her severed left ulnar nerve at step four. First, he reviewed emergency room records, records from Carter's orthopedic surgeon, and records from a nerve conduction study related to Carter's left ulnar nerve impairment. (*See id.* at Pg. ID 77-78.) Then the ALJ determined what restrictions that impairment caused and crafted a residual functional capacity that "accommodated th[ose] restrictions" by limiting the use of Carter's ring and little fingers on her non-dominant hand. (*Id.*)

8

An ALJ's findings at step three are not necessarily inadequate so long as the "ALJ performed some of [his] analysis in a different section of his opinion." *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *3 (E.D. Mich. Sept. 26, 2014) (overruling objection that ALJ had "failed to articulate the reasoning behind his Step Three conclusion" and holding that "the ALJ sufficiently articulated his Step Three findings under Sixth Circuit precedent" where ALJ performed detailed step four analysis). Indeed, that is what the United States Court of Appeals for the Sixth Circuit concluded in *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470 (6th Cir. 2012). In *Malone*, the plaintiff argued that the "ALJ erred by failing to make specific findings on the issue of whether [plaintiff's] impairments were equivalent to one of the [listed] impairments" at step three of the disability analysis. *See id.* at 472. The Sixth Circuit rejected that argument as "unpersuasive because the ALJ considered all of the symptoms that were consistent with the medical evidence in determining [the plaintiff's] residual functional capacity" at step four.[1] *Id.* Thus, because the ALJ sufficiently analyzed Carter's physical impairments at step four of his analysis, any failure to do so at step three does not warrant relief.

---

[1] *See also Morgan v. Colvin*, 2015 WL 5612039, at *4 (E.D. Ky. 2015) ("Even though the ALJ in this case failed to analyze Listings 1.02 and 1.04 in her step three analysis … certain factual findings in other parts of the decision render the ALJ's mistake at step three harmless.").

9

**B**

Second, any error by the ALJ at step three was harmless because Carter has failed to show that she met her burden at that step to show that her impairments, individually or in combination, met or medically equaled a listed impairment. *See, e.g.*, *Thacker v. Soc. Sec. Admin*, 93 F. App'x 725, 727-28 (6th Cir. 2004) (describing claimant's burden at step three). In order to satisfy that burden, Carter had to show that her impairments "met *all* of the specified medical criteria" in a given listing. *Malone*, 507 F. App'x at 472 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); emphasis in original). She did not do that.

Carter insists that "MRI and X-ray reports [from her] rheumatologist [] show[] enough impairment to establish the[] elements" of Listing 1.02. (Objections, ECF #23 at Pg. ID 593.) But Carter did not show *how* this evidence – the report from her rheumatologist – satisfies her burden to show that she met all of the specified medical criteria in Listing 1.02.[2] For example, Carter did not attempt to demonstrate how the rheumatologist's report established that she had an "inability to ambulate effectively," one of Listing 1.02's requirements. 20 C.F.R. Pt. 404, Subpt. P, App 1, § 102. Carter highlights that her rheumatologist concluded that Carter had a

---

[2] In fact, it does not appear – and Carter has not identified any evidence in the record to establish – that she ever argued to the ALJ that she was disabled because her impairments, individually or in combination, met or medically equaled the elements of Listing 1.02 (or any other listing).

"[d]egenerative tear of the posterior root of the medial meniscus and the radial tear of the anterior horn/root of the lateral meniscus," a "[c]hronic sprain of the fibular collateral ligament and the medial collateral ligament," "[m]ild patellar tendinosis," "[m]oderate medial tibiofemoral and mild patellofemoral osteoarthritis," and "[m]oderate joint effusion with intraarticular loose bodies and/or proliferated synovitis" (Objections, ECF #23 at Pg. ID 593.) However, Carter did not take (and still has not taken) the next and necessary step to show *how* these impairments rendered her unable to ambulate effectively. Nor did Carter show how her knee impairment, individually or in combination with her other impairments, otherwise met all of the other medical criteria of Listing 1.02. Thus, Carter has not shown that she is entitled to relief. *See e.g.*, *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (holding that "even if [the ALJ's factual findings] failed to support the ALJ's step-three findings," such an "error is harmless" where the claimant "has not shown that his impairment met or medically equaled in severity any listed impairment" during the relevant time period).

Finally, Carter has not shown how consideration of her rheumatologist's report would lead to any different decision on remand. The ALJ expressly referenced and considered each of the knee impairments that Carter's rheumatologist

11

diagnosed.[3] But the ALJ nevertheless concluded that, based on his review of the full medical record, Carter had a "normal gait," a "full range of motion," and she "did not require the use of an assistive device for ambulation." (ALJ's Decision, ECF #15-2 at Pg. ID 78.) He further noted that during a physical examination with a consultative examiner, Carter "did not use a walker" and that Carter told the examiner that she (Carter) could "walk at least 500 feet without using her walker." (*Id.*) And Carter has not attempted to explain why the ALJ's reliance on this evidence was misplaced, or how, given this evidence, her knee impairment could meet or medically equal the criteria of Listing 1.02. Simply put, the Court is not persuaded that further consideration of the rheumatologist's report, or the X-rays and MRI underlying that report, would lead to any different conclusion on remand.

---

[3] In Carter's Objections, she argues that the ALJ "failed to consider, much less analyze and develop a record analyzing the medical records as a whole, including the x-ray and MRI" performed by her rheumatologist. (Objections, ECF #23 at Pg. ID 591.) That statement does not appear to be accurate. The ALJ expressly referenced and cited to the September 11, 2015, report from Carter's rheumatologist that analyzed the results from Carter's August 2017 MRI. (*See* ALJ's Decision, ECF #15-2 at Pg. ID 36, citing to rheumatologist report, ECF #15-7 at Pg. ID 393-95.) This is the same report that Carter references in her Objections. (*See* Objections, ECF #23 at Pg. ID 591.) In addition, the September 11, 2015, rheumatologist report that Carter relies upon does not appear to discuss any X-rays of Carter's knee. And Carter has not identified any other records that included an analysis of her X-rays that the ALJ failed to consider. Thus, the ALJ appears to have reviewed and considered the same September 11, 2015, rheumatologist report that Carter relies upon in the Objections.

For all of these reasons, remand is not required, and Carter is not entitled to summary judgment.

## C

Carter counters that remand is required under the Sixth Circuit's decision in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011). In *Reynolds*, the Sixth Circuit remanded a claimant's disability applications where an ALJ "entirely failed to analyze whether the claimant's physical impairments met or equaled a Listed Impairment" at step three of the disability analysis. *Id.* at 413. The Court disagrees that *Reynolds* compels remand in this case.

*Reynolds* does not establish a *per se* rule that remand is required in every instance where an ALJ does not conduct a sufficient analysis at step three. For instance, after *Reynolds*, in *Forrest, supra*, the Sixth Circuit declined to remand where "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three" and the plaintiff had "not shown that his impairments met or medically equaled in severity any listed impairment." *Forrest*, 591 F. App'x at 366 (declining to remand and distinguishing *Reynolds* on the ground that "it was possible that the claimant [in *Reynolds*] had put forward sufficient evidence to meet [a specific] listing"). *See also Malone*, 507 F. App'x at 472 (declining to remand after *Reynolds* on the basis that an ALJ's step three analysis was inadequate because

the ALJ's decision was "supported by substantial evidence"). Carter has not persuaded the Court that *Reynolds* mandates remand of her applications for benefits.

IV

For the reasons stated above:

- Carter's Objections to the R&R (ECF #23) are **OVERRULED**;

- The recommended disposition of the R&R (ECF #22) is **ADOPTED**;

- The Commissioner's Motion for Summary Judgment (ECF #19) is **GRANTED**; and

- Carter's Motion for Summary Judgment (ECF #18) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 5, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 5, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764